UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALVIN B. GRIGSBY,<br><br>        Plaintiff,<br><br>    v.<br><br>U.S. DEPT OF JUSTICE, et al.,<br><br>        Defendants. | Case No. 25-cv-00192-DMR<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 16 |

On January 6, 2025, Plaintiff Calvin Grigsby filed this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the United States Department of Justice ("DOJ") and Federal Bureau of Investigation ("FBI") (collectively, "Defendants"), seeking the expedited production of documents related to indictments against him in the Southern District of Florida. [*See* Docket No. 1 (Compl.).] Grigsby now brings this motion for expedited processing pursuant to Federal Rule of Civil Procedure 56. [Docket No. 16 (Mot.).] Defendants filed an opposition, and Grigsby filed a reply. [Docket No. 17 (Opp'n); Docket No. 18 (Reply).]

This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the reasons set forth below, the motion is denied.

**I.    BACKGROUND**

    **A.    Factual History**

On October 15, 2021, Grigsby submitted a FOIA request to the FBI "requesting all FBI Agency records including, without limitation, FBI 302's, which refer to in the subject line or body Calvin Grigsby from January 1, 1985 to January 1 2021." [Docket No. 17-2 at 3, 6.][1] He also

---

[1] Where exhibits are not independently numbered, the pin citations refer to the ECF pagination.

1    sought expedited processing, explaining

> I had two indictments in 1996.  In the first heard the grand jury was shown "revised or restated financial statements in a Deloitte Touche audit report that falsely created after the fact amounts I allegedly stole from the local agency.  [T]he audit report was also modified to use an accrual basis of accounting changing the cash basis of accounting used for the last 15 years to falsely create the $10,000 jurisdictional amount in a 666 case.  In the second heard case all witnesses taken before the grand jury were give[n] inducements (reduced sentences, immunity etc) against me and not a single witness given inducements showed up a trial.  I am attempting to have the falsely procured indictments set aside.  I am 75 years old and not a lot of time left to try and clear my name.

*Id.* at 3; Docket No. 17-1 (Hammer Decl.) ¶ 5.

On October 22, 2021, the FBI sent Grigsby a letter "acknowledg[ing] receipt of [his] Freedom of Information/Privacy Acts (FOIPA) request to the FBI." [Docket No. 17-3 at 1.]  The letter further stated that "[his] letter did not contain sufficient information to conduct an accurate search of the Central Records System" and sought additional personal and contact information. *Id.* (both).  Grigsby's response is dated November 1, 2021; however, the FBI received it on November 8, 2021.  [Docket No. 17-3 at 4-5; Hammer Decl. ¶ 7 & n.2.]

The FBI sent Grigsby three letters dated November 18, 2021.  One letter stated that his "request has been received at FBI Headquarters for processing."  [Docket No. 16-1 at 1; Docket No. 17-4 at 2.]  Another letter informed Grigsby that "[he] ha[d] not provided enough information concerning statutory requirements permitting expedition; therefore, [his] request [for expedited processing] iss denied."  [Docket No. 16-1 at 3; Docket No. 17-5 at 2.]

In the final letter, the FBI notified Grigsby "that 'unusual circumstances' apply to the processing of [his] request" and explained what constitutes such "unusual circumstances":

> There is a need to search for and collect records from field offices and/or other offices that are separate from the FBI Record/Information Dissemination Section (RIDS).
>
> There is a need to search for, collect, and examine a voluminous amount of separate and distinct records.
>
> There is a need for consultation with another agency or two or more DOJ components.

[Docket No. 16-1 at 5; Docket No. 17-6 at 2.]  The FBI further explained that "[he] ha[s] the

2

1   opportunity to reduce the scope of your request; this will accelerate the process and could potentially
2   place your request in a quicker processing queue" and "may also reduce search and duplication costs
3   and allow for a more timely receipt of your information." *Id.* (both)  The letter asked Grigsby to
4   "[p]lease advise in writing if you would like to discuss reducing the scope of your request." *Id.*
5   (both).

6       On October 3, 2021, the FBI emailed Grigsby that "[t]he FBI located approximately 7,596
7   pages (multi subject) potentially responsive to [his] request." [Docket No. 16-3 at 1; Docket No. 17-
8   7 at 3.]  The emails advised Grigsby that "[t]he current average time to complete [his] x-large track
9   request is at least 79 months"[2] and that "[r]educing the scope of [his] request may accelerate the
10  processing, allow for a timelier receipt of the information [he] seek[s], and reduce the duplication
11  costs, if applicable." *Id.* (both).  The email thus asked, "Would you be willing to consider reducing
12  the scope of your request to place it in a smaller, potentially faster processing track?" [Docket
13  No. 16-3 at 1; Docket No. 17-7 at 2.]

14      On October 4, 2021, Grigsby responded, "I would like to wait however many years it takes
15  and can send a credit card or use whatever payment gets the process started." *Id.* (both).  The FBI
16  confirmed receipt of Grigsby's email the next day and stated that "[o]nce the case is assigned out of
17  the backlog queue, . . . the FOIA analyst reviews approximately 500 potentially responsive pages
18  then a release of responsive material will be sent to you on CD." [Docket No. 17-7 at 2.]

19      In letters dated July 10 and 11, 2024, the FBI wrote Grigsby that it "ha[d] located
20  approximately 7959 pages of potentially responsive documents," re-stated that his request was
21  "currently in the x-large track," and asked whether, "[g]iven the passage of time and a potential

---

[2] The email explained the FBI's "multi-track processing system":

> Small track requests (0-50 pages) current average time is approximately 3 months to complete;
> Medium track requests (51-500 pages) current average time is approximately 32 months to complete;
> Large track requests (501-4,999 pages) current average time is approximately 67 months to complete; and
> Extra-large track requests (over 5,000 pages) current average

[Docket No. 17-7 at 3.]

change in circumstance," he was "still interested in having [his] FOIPA request processed." [Docket No. 16-4 at 1; Docket No. 17-8 at 2.]³

On August 8, 2024, Grigsby appealed the denial of his request for expedited processing. [Docket No. 16-6; Docket No. 17-9.] According to Grigsby,

> [t]his is unquestionably a matter qualified for expedited treatment and to date, after years, the FBI has not been able to find and release a single document. The FBI can release documents as they find them and scan them it is not necessary to assemble all the possible documents including archived documents before releasing the first document.

[Docket No. 16-6 at 1; Docket No. 17-9 at 3.] He further provided the following "justification for expedited treatment":

> (1) FBI information leading to Grigsby's indictments continue to pose an imminent threat to his making a living or his livelihood; (2) There was actual fraudulent government activity in falsifying transcripts and accounting records taken to the Grand Jury; (3) the indictments lacked due process because of lack of integrity in governmental activity of falsifying records; and (4) the matter of two federal indictments where Grigsby was acquitted of both involved 100s of pages of widespread and exceptional media interest and possible questions government integrity in how could any individual be found innocent in two separate indictments resulting in judge ordered acquittals. (5)This governmental falsification of records also resulted in a 3 year SEC investigation involving hundreds of subpoenas to a widespread group of municipal issuers ending in a letter of "no enforcement" or in plain English "no violations." There was not a single corroboration of the FBI's false claims other than from a paid informant who had already signed a plea Agreement admitting bribery of City of Miami officials which the prosecutor agreed would be forgiven or "torn up" if he testified [Falsely] against Grigsby.

[Docket No. 16-6 at 2 (brackets in the original); Docket No. 17-9 at 4 (brackets in the original); *see* Docket No. 16-2 at 1 (August 14, 2024 email from Grigsby repeating his justifications for expedited processing).] The Office of Information Policy ("OIP") of the DOJ acknowledged receipt of Grigsby's appeal the same day. [Docket No. 17-10.]

OIP denied Grigsby's appeal on August 21, 2024. [Docket No. 17-11.] OIP found that

---

³ Grigsby submits a letter dated July 11, 2024, which appears to be nearly identical to a July 10, 2024 letter submitted by Defendants. [*Compare* Docket No. 16-4 *with* Docket No. 17-8.] The only difference is that Defendants' letter attaches an "Explanation of Exemptions." [Docket No. 17-8 at 2.] It is unclear why two letters were sent, or if Grigsby received both.

4

1  Grigsby "ha[d] not established that [his] request fits within any of the four Department of Justice
2  standards for expedited treatment" such that "the FBI properly determined that [he] failed to meet
3  [his] burden under any standard for expedited processing. *Id.* at 1.

### B. Procedural History

Grigsby initiated this action on January 6, 2025, seeking expedited processing of his FOIA request. *See* Compl. "[O]nce Plaintiff filed litigation the request was pulled from the backlog where it resided in the extra-large queue, and it was assigned directly to a FOIA analyst for review and processing at a rate of 250 pages reviewed per month. Hammer Decl. ¶ 21. Grigsby's request is being processed at the standard rate of 250 pages reviewed per month. *Id.* "Given that there are an estimated 7,959 pages potentially responsive to Plaintiff's request, completion of the processing of Plaintiffs request is now anticipated to be approximately 33 months[,]" inclusive of "a two-month start-up time for the FOIA analyst to begin review of the first 250-page increment, apply redactions to the first batch of exempt information, move the proposed monthly interim through the review and quality control process, run security protocols, and make the first interim release to Plaintiff." *Id.* ¶ 21 & n.5.

The FBI filed a status report on August 5, 2025. [Docket No. 20.] On July 15, 2025, the FBI mailed its first monthly release of documents to Grigsby. *Id.* at 1. For that tranche, the FBI reviewed 252 out of the 7,595 pages. Out of those 252 pages, 135 pages were released to Grigsby. *Id.* Another 114 pages, which originated with or contained information concerning other government agencies, were sent to those agencies for review. *Id.* The FBI will provide Grigsby with update about those pages once the consultation is complete. *Id.* at 1-2. The FBI anticipates that its next monthly release will be on or around August 15, 2025. *Id.* at 2.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 56

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477

5

U.S. 317, 323 (1986)). The court must view the evidence in the light most favorable to the non-moving party. *See Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A genuine issue of fact exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could return a verdict for the nonmoving party." *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (alteration in original; (quoting *Anderson*, 477 U.S. at 248). The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*, 477 U.S. at 255).

### B.   FOIA's Expedited Processing Standard

"Congress enacted [FOIA] to facilitate public access to government records and thereby 'ensure an informed citizenry' that could hold the government 'accountable to the governed.'" *Ctr. for Investigative Reporting v. U.S. Dep't of Lab.*, No. 24-880, -- F.4th --, 2025 WL 2155687, at *3 (9th Cir. July 30, 2025) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). "A governmental agency normally must process FOIA requests for agency records on a first-in, first-out basis." *Elec. Frontier Found. v. Off. of the Dir. of Nat'l Intel.*, 542 F. Supp. 2d 1181, 1184 (N.D. Cal. 2008).

However, FOIA requires "[e]ach agency [to] promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records . . . in cases in which the person requesting the records demonstrates a compelling need[.]" 5 U.S.C. § 552(a)(6)(E)(i)(I); *see* 28 C.F.R. § 16.5(b) ("All components must designate a specific track for requests that are granted expedited processing . . ."). A "compelling need" exists when "a failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," or "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(I)-(II); *see* 28 C.F.R. § 16.5(e)(1). If an agency grants expedited processing, it "shall process [the request] as soon as practicable[.]" 5 U.S.C. § 552(a)(6)(E)(iii).

6

1    In addition to the statutory framework, 28 C.F.R. § 16, Subpart A set forth "the rules that the Department of Justice follows in processing requests for records under the Freedom of Information Act[.]" 28 C.F.R. § 16.1(a). These rules are "read in conjunction with the text of the FOIA[.]" *Id.*

These rules also set forth conditions where expedited processing is warranted:

> (1) Requests and appeals shall be processed on an expedited basis whenever it is determined that they involve:
>
> (i) Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;
>
> (ii) An urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information;
>
> (iii) The loss of substantial due process rights; or
>
> (iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence.

28 C.F.R. § 16.5(e)(1)(i)-(iv).

These provisions are "'intended to be narrowly applied.'" *Al-Fayed v. C.I.A.*, 254 F.3d 300, 310 (D.C. Cir. 2001) (quoting H.R. Rep. No. 104–795, at 26 (1996)). "Congress' rationale for a narrow application is clear: 'Given the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment.'" *Id.* (quoting H.R. Rep. No. 104–795, at 26 (1996)).

**III.   DISCUSSION**

    **A.   Timeliness of the FBI's Response**

As the court understands it, Grigsby appears to argue that the FBI failed to respond to his FOIA request within the mandatory 20-business day period, *see* 5 U.S.C. § 552(a)(6)(A), and that the November 18, 2024 letter informing him that "'unusual circumstances' appl[ied] to the processing of [his] request" did not toll that time period. Mot. at 7. According to Grigsby, this failure entitles him to expedited processing, and he seeks "an order requiring at the very least 2500 documents be produced per month." *Id.* at 10.

7

Defendants contend that the FBI's response was proper, as it acknowledged Grigsby's FOIA request with 7 days of receipt thereof, and its November 18, 2024 letter notifying him of "unusual circumstances" contained the statutorily required language. *Id.* at 5-6. Defendants note that the FBI "advised [Grigsby] of the volume to be reviewed for his request, and provided transparent timelines for its anticipated responses." *Id.* at 6. Defendants also argue that the additional time needed to process Grigsby's request was proper, as "[t]he FBI is facing considerable workload despite limited staffing and the challenge of equitably allocating its finite resources across competing mandates." *Id.*

An agency that receives a FOIA request has 20 business days to "determine . . . whether to comply with such request and shall immediately notify the person making such request of" (1) the determination to comply or not, and the reasons for such determination; (2) "the right of such person to seek assistance from the FOIA Public Liaison of the agency"; and (3) if the determination is adverse, the right to appeal and seek dispute resolution services. 5 U.S.C. § 552(a)(6)(A)(i)(I)-(III). A "determination" does not mean a production of documents. *Seavey v. Dep't of Just.*, 266 F. Supp. 3d 241, 244 (D.D.C. 2017). Rather, once the agency determines it will comply with the request, "the records shall be made promptly available to such person making such request." 5 U.S.C. § 552(a)(6)(C)(i).

The deadline may be extended by 10 days if the agency determines there are "unusual circumstances" that delay the agency's ability to review the request, and the agency "notif[ies] the person making the request if the request cannot be processed within the . . . time limit . . . and provide[s] the person an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." 5 U.S.C. § 552(a)(4)(viii)(II)(aa), (a)(6)(B)(ii). "Unusual circumstances" are defined, "but only to the extent reasonably necessary to the proper processing of the particular requests," as

> (I) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;
>
> (II) the need to search for, collect, and appropriately examine a

8

> voluminous amount of separate and distinct records which are demanded in a single request; or
>
> (III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

5 U.S.C. § 552(a)(6)(A)(iii). Any delay beyond the 10-day extension for "unusual circumstances" requires "exceptional circumstances." 5 U.S.C. § 522(a)(6)(B)(6)(C)(i).

The court finds that the FBI's response complied with FOIA's requirements. Grigsby submitted his FOIA request on October 15, 2021, and the FBI acknowledged receipt thereof 6 days later, on October 22, 2021. [Docket Nos. 17-2, 17-3.] The October 22, 2021 letter also makes clear that the FBI needed additional information to assess Grigsby's request. [Docket No. 17-4.] Grigsby provided the requested information in a response signed on November 1, 2021, which the FBI received on November 8, 2021. *See id.*; Hammer Decl. ¶ 7 & n2. In three letters dated November 18, 2021, the FBI acknowledged receipt of Grigsby's FOIA request and provided him with the assigned FBI FOIPA Request Number; informed him that his request for expedited processing was denied because he did "not provide[] enough information concerning the statutory requirements permitting expedition; and notified him that "unusual circumstances" applied to his request. [Docket Nos. 17-4, 17-5, 17-6.]

The court finds that November 8, 2021—the date the FBI received the additional requested information from Grigsby—was the triggering date for the FBI to determine whether to comply with Grigsby's request and notify him of the determination, as required by 5 U.S.C. § 552(a)(6)(A)(i). *See Trupei v. Bureau of Customs & Border Prot.*, No. CIV. A. 07-0475 PLF, 2008 WL 249878, at *1 (D.D.C. Jan. 29, 2008) ("The FOIA requires an agency 'to determine within twenty days *after the receipt*' of a properly submitted request 'whether to comply with the request' and to notify the requester accordingly. 5 U.S.C. § 552(a)(6)(A)(i) (emphasis added). It therefore follows that an agency's FOIA obligations are not triggered until a request has been received."). Thus, the FBI had until November 23, 2021 (November 8, 2021 + 10 business days) to make a determination and notify Grigsby thereof. The November 18, 2021 letters fall well within that deadline.

The November 18, 2021 letter regarding the "unusual circumstances" included the

information required by 5 U.S.C. § 552(a)(6)(B)(ii). It identified the "unusual circumstances":

> There is a need to search for and collect records from field offices and/or other offices that are separate from the FBI Record/Information Dissemination Section (RIDS).
>
> There is a need to search for, collect, and examine a voluminous amount of separate and distinct records.
>
> There is a need for consultation with another agency or two or more DOJ components.

[Docket No. 17-6 at 2.]

Grigsby's contention that none of the "unusual circumstances" identified in the November 8, 2021 letter apply to him is unsupported by any evidence. For instance, his assertion that his "request is for a single individual and his solely owned company" (Mot. at 7) does not necessarily exclude the possibility that there is a "voluminous amount of separate and distinct records." Given that his request broadly seeks "*all* FBI Agency records . . . which refer to . . . Calvin Grigsby" over a 36-year time period [Docket No. 17-2 at 3 (emphasis added)], it is entirely plausible that his request would hit on a "voluminous amount of separate and distinct records." Indeed, the FBI has identified over 7,500 potentially responsive documents. [Docket Nos. 17-7, 17-8.]

Grigsby also fails to present any evidence to support his assertion that "[n]o other agency is involved, as far has been disclosed." Mot. at 7. Nothing in the record before the court indicates that the FBI did not need to consult with "another agency or two or more DOJ components" or, for that matter, that the requested records were retrieved from sources other than the FBI Record/Information Dissemination Section.[4]

The letter also informed Grigsby of the following:

> You have the opportunity to reduce the scope of your request; this will accelerate the process and could potentially place your request in a quicker processing queue. This may also reduce search and duplication costs and allow for a more timely receipt of your information.
>
> […]
>
> You may seek dispute resolution services by contacting the Office of

---

[4] To the contrary, Defendants' August 5, 2025 status report states that other government agencies are reviewing 114 pages of responsive documents that originated with or contained information concerning those agencies. [Docket No. 20 at 1.]

10

>Government Information Services (OGIS). The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.
>
>[…]
>
>Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.

Docket No. 17-6 at 2-3. This comports with § 552(a)(6)(B)(ii)'s requirement that the agency's written notice of "unusual circumstances" "provide the person an opportunity to limit the scope of the request . . . , . . . make available its FOIA Public Liaison, . . . and notify the requester of the right of the requester to seek dispute resolution services from the Office of Government Information Services."

The court thus finds that Grigsby has not established that the FBI failed to comply with FOIA's notification requirements. In any event, Grigsby fails to show that expedited processing is an available remedy for any alleged noncompliance. As explained below, the FOIA statute sets forth specific circumstances that justify expedited processing. An allegedly improper agency response is not one of them.

### B. Compelling Need for Expedited Processing

Grigsby argues that the FBI did not have a basis to deny his request for expedited processing. Mot. at 11. He further contends that he has a compelling need for expedited processing because "the widespread media interest in this case is overwhelming" and because he has a "need to rectify due process violations in two separate acquittals." *Id.* at 12. Defendants argue the FBI's denial was proper and that neither of the reasons presented in Grigsby's motion constitute a basis for expedited processing. Opp'n at 7-10.

#### 1. The FBI's Denial of Expedited Processing

The FBI's letter identified the four circumstances set forth in 28 C.F.R.§ 16.5(e)(1) under which Defendants could grant expedited processing. [Docket No. 17-5 at 2.] The letter then explained that "[y]ou have not provided enough information concerning the statutory requirements permitting expedition; therefore, your request is denied." *Id.*

The court cannot find the denial was improper. Grigsby's justification for expedited

11

1  processing summarized his indictments and court cases, and stated that "I am attempting to have the
2  falsely procured indictments set aside. I am 75 years old and not a lot of time left to try and clear
3  my name." The age of the person making the request is not one of the factors that Defendants may
4  consider when determining whether expedited processing is appropriate. *See* 28 C.F.R.
5  § 16.5(e)(1)(i)-(iv). Absent information showing the existence of the circumstances identified in 28
6  C.F.R. § 16.5(e)(1)(i)-(iv), the FBI was not required to grant Grigsby' request.

### 2.  Grigsby's Compelling Needs

Grigsby also fails to show that he now has a compelling need for expedited processing. The indictments and acquittals occurred between 1996 and 1999. Nothing in the record indicates that Grigsby is currently experiencing a "loss of substantial due process rights" that justifies expedited processing. 28 C.F.R. § 16.5(e)(1)(iii).

Similarly, the court cannot find that Grigsby's request concerns "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). Although Grigsby submits a number of news articles about his indictments, acquittals, and subsequent discrimination lawsuit, the majority of the articles are dated between 1986 and 1999, with only one dated over a decade ago in 2014. [*See* Docket No. 16-5.]

Given the lack of evidence of any current "substantial loss of due process" or "widespread and exceptional media interest," 28 C.F.R. § 16.5(e)(1)(iii)-(iv), coupled with the fact that the "categories for compelling need are intended to be narrowly applied," *Al-Fayed*, 254 F.3d at 310 (cleaned up), the court finds that Grigsby fails to establish that he is entitled to expedited processing. In light of this finding, the court also does not find that the FBI's denial of expedited processing was improper.

### IV.  CONCLUSION

For the foregoing reasons, the court denies Grigsby's motion.

//
//
//

12

**IT IS SO ORDERED.**

Dated: August 19, 2025

_____
Donna M. Ryu
Chief Magistrate Judge

13